**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **H. RAYMOND SOLK, ET AL.** | : | |
| | : | |
| **Plaintiff(s),** | : | **Civil Action No. 08-1653 (JLL)** |
| | : | |
| **v.** | : | |
| | : | |
| **BUFFALO ACADEMY OF SCIENCE** | : | |
| | : | |
| **Defendant(s).** | : | |
| | : | |

## REPORT AND RECOMMENDATION

This matter comes before the Court on the motion of Defendant Buffalo Academy of Science to dismiss the Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction (Docket Entry No. 12). The Court has reviewed the submissions in support of and in opposition to the motion. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. This Report and Recommendation is rendered pursuant to 28 U.S.C. 636(b)(1)(B). For the reasons expressed below, I respectfully recommend that the Court enter an Order granting Defendant's motion.

## PROCEDURAL HISTORY

On February 13, 2008, Plaintiffs H. Raymond Solk and Montgomery Mortgage Capital ("Plaintiffs") filed a Complaint in the Superior Court of New Jersey, Law Division, alleging claims of breach of contract and unjust enrichment against Defendant Buffalo Academy of Science ("Defendant" or "Buffalo Academy"). On April 3, 2008, Defendant timely filed a Notice of Removal to this Court. Thereafter, on April 10, 2008, Defendant moved to dismiss Plaintiffs' Complaint for lack of personal jurisdiction. Plaintiffs opposed Defendant's motion and asked the Court to order jurisdictional discovery.

On December 3, 2008, the Court denied Defendant's motion without prejudice and granted Plaintiffs' request for jurisdictional discovery. The Court afforded the parties sixty days to conduct such discovery and granted Defendant leave to re-file its motion to dismiss upon the conclusion of that time period. Plaintiffs conducted no discovery and, on February 18, 2009,

Defendant re-filed its motion to dismiss for lack of personal jurisdiction.

## FACTUAL BACKGROUND

Plaintiff Montgomery Mortgage Capital is a licensed New Jersey mortgage banker. (Cmp. at ¶ 2). Plaintiff H. Raymond Solk is the director of commercial lending at Montgomery Mortgage Capital and a licensed mortgage loan officer in the state of New Jersey. (Cmp. at ¶ 1). Defendant Buffalo Academy is a 'charter school,' a New York education corporation chartered by the New York State Board of Regents pursuant to Article 56 of the New York State Education Law. As such, Defendant is a New York not-for-profit corporation. (Dft. Moving Brief at P. 4)

In their Complaint, Plaintiffs allege that they entered into a Broker Financing Agreement with Defendant whereby Plaintiffs agreed to procure a mortgage on Defendant's behalf. (Cmp. at ¶ 9). According to Plaintiffs, the purpose of the mortgage was to finance Defendant's purchase and renovation of a building located at 190 Franklin Street, Buffalo, New York (the "Franklin Building"). (Cmp. at ¶ 10-12). Plaintiffs contend that the Broker Financing Agreement required Defendant to pay commission and consultancy fees, and that Defendant has failed to remit payment for those fees. (Cmp. at ¶ 13-16).

Defendant denies that it was a party to any agreement with Plaintiffs. Rather, Defendant asserts that it arranged to lease the Franklin Building from the building's owner, non-party Apple Educational Services, Inc. ("Apple"). (Dft. Moving Brief at P. 4-5). Apple is a New York corporation with its principal place of business in New York City. (Id.). Defendant states that it entered into a lease agreement with Apple for the Franklin Building, and that the lease agreement required Apple to remodel and renovate the Franklin Building. (Id.). A copy of the lease agreement is an exhibit to Defendant's opposition.

According to Defendant, Apple needed funds to accomplish the renovation, and engaged the services of Plaintiffs to assist it in obtaining the financing. (Id.). Defendant asserts that the only agreement at issue was between non-party Apple and Plaintiffs. Defendant further states that it only interacted with Plaintiffs to the extent its landlord, Apple, needed to demonstrate that Defendant would be a stable tenant. (Id. at P. 16)

Defendant also denies that it intended to purchase the Franklin Building from Apple during the time period in question. (Id. at P. 5). Defendant states that it has negotiated the potential sale of the Franklin Building from Apple, but asserts that these discussions began only *after* Apple was unable to obtain the financing necessary to complete the renovation. (Id. at P. 5).

## DISCUSSION

### I.      Applicable Standards

Pursuant to 28 U.S.C. § 1332, a federal district court may exercise jurisdiction over a non-resident defendant to the extent permitted by the law of the state in which it sits. See O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007); Provident Nat'l

Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436 (3d Cir. 1987); Fed. R. Civ. P. 4(k).
New Jersey's long-arm statute allows a court to exercise personal jurisdiction over non-resident
defendants to the full extent allowed under the due process requirements of the United States
Constitution.  See N.J.Ct. R. 4:4-4; Eaton Corp. v. Maslym Holding Co., 929 F.Supp. 792, 796
(D.N.J. 1996).  Accordingly, a party's amenability to suit in New Jersey "must be judged by
Fourteenth Amendment standards."  DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284
(3d Cir. 1981).

 To comply with the due process clause of the Fourteenth Amendment, a court must
employ a two-part analysis. Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products
Co., 75 F.3d 147, 150 (3d Cir. 1995).  First, a court may not exercise personal jurisdiction over a
non-resident defendant unless the defendant has certain 'minimum contacts' with the forum.
World-Wide Volkswagen Corp.v. Woodson, 444 U.S. 286, 291 (1980).  To find 'minimum
contacts,' a court must determine that the defendant has purposefully directed its activities
towards the forum.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985).   Thus, there
must be "some act by which the defendant purposefully avails itself of the privilege of
conducting activities within the forum State, thus invoking the benefits and protections of its
laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).  Second, if 'minimum contacts' are
shown, "jurisdiction may be exercised where the court determines, in its discretion, that to do so
would comport with 'traditional notions of  fair play and substantial justice'" Vetrotex, 75 F.3d
at 150-51 (citing Int'l Shoe v. Washington, 326 U.S. 310, 326 (1945)).

 Minimum contacts may give rise to two types of personal jurisdiction: general
jurisdiction and specific jurisdiction.  To establish general jurisdiction, a plaintiff must
demonstrate that a defendant "engaged in 'continuous and systemic' contacts with the forum
state."  Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc., 983 F.2d 551, 554 (3d Cir.
1992).  On the other hand, a plaintiff seeking to show specific jurisdiction must present evidence
demonstrating that "the cause of action arose specifically from defendant's particular activities
within the forum state."  Id.

 In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal
jurisdiction the Court must look to evidence beyond that which is contained in the pleadings.
"Once the defense has been raised, the plaintiff must sustain its burden of proof in establishing
jurisdictional facts through sworn affidavits or other competent evidence ..." Time Share
Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 67, n.9 (3d Cir. 1984); see also Bane v.
Netlink, Inc., 925 F.2d 637, 639 (3d Cir. 1991).


## II. General Jurisdiction

 General jurisdiction is premised upon a finding that "the defendant has continuous and
systematic contacts with the state which are unrelated to the subject matter of the lawsuit."
Database Amer., Inc. v. Bellsouth Advertising & Pub. Corp., 825 F.Supp. 1195, 1209 (D.N.J.
1993); see also Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984).  A
plaintiff seeking to establish general jurisdiction faces a higher burden than is required to
establish specific jurisdiction, and "must show significantly more than mere minimum contacts."

Id.  To determine whether general jurisdiction exists, a court may examine several factors, including whether the defendant: (1) holds itself out to the public as doing business in the state; (2) is incorporated in or registered to do business in the state; (3) has appointed an agent for receipt of process within the state; (4) pays taxes to the state; (5) advertises in or otherwise solicits business in the state; (6) generates revenue from sales in, services rendered within, or goods delivered within the state; and/or (7) maintains an office in the state.  Id.

Weighing the factors set forth above, the Court finds that Plaintiffs have not met their burden to establish that this Court has general jurisdiction over Defendant.  Defendant does not have "continuous and systematic contacts" with New Jersey "which are unrelated to the subject matter" of this suit.  Database Amer., 825 F.Supp. 1195.  Defendant does not hold itself out as doing business in New Jersey, is not incorporated in New Jersey and is not registered to do business in New Jersey. (Dft. Moving Brief at P. 12).  Defendant recruits and enrolls students from New York state only, and generates no revenue from New Jersey residents or from services rendered in New Jersey.  (Id.).  Accordingly, Plaintiffs have failed to demonstrate how this court may exercise general jurisdiction over Defendant.

## III.  Specific Jurisdiction

Specific jurisdiction may only be invoked "when the cause of action arises from the defendant's forum related activities."  Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co., 75 F.3d 147, 151 (3d Cir. 1995); see also McGee v. Int'l life Ins. Co., 355 U.S. 220 (1957).  To satisfy specific jurisdiction, the defendant's minimum contacts with the forum state must be "such that [the defendant] should reasonably anticipate being haled into court there."  World Wide Volkswagen, 444 U.S. at 297.  The touchstone of this inquiry is whether the defendant purposely established those minimum contacts.  See North Penn Gas Co. v. Corning Natural Gas Corp. 897 F.2d 687, 690 (3d Cir.)

### A. Brokerage Financing Agreement Allegedly Executed by Defendant

Plaintiffs appear to argue that this Court has specific jurisdiction over Defendant by virtue of a consent to jurisdiction clause contained in a Brokerage Financing Agreement, dated August 4, 2006.[1]  (Pl. Opp'n. Brief at P. 2; Ex. A).  The Court assumes Plaintiffs contend that the agreement creates a basis to find jurisdiction over Defendant.  Defendant, however, has certified that it is not a party to the agreement.  (Dec. of L. Kaya, dated March 16, 2009, at ¶ 2-3).  Defendant states that no party was ever given authority to sign the Brokerage Financing Agreement on its behalf and points out that Plaintiffs have failed to demonstrate the authenticity

---

[1]In their Complaint, Plaintiffs allege that they entered into a Brokerage Financing Agreement with Defendant on May 1, 2007.  The Court notes that the document attached to Plaintiffs' opposition to the instant motion is dated August 4, 2006.  Defendant states that it requested a copy of the Brokerage Financing Agreement which purportedly was executed on its behalf on numerous occasions.  Defendant contends that it received a copy of the document for the first time when it was served with Plaintiffs' opposition to this motion.

4

of the document. (Id.; Dft. Reply Brief at P. 2). Defendant's declaration specifically provides that "Buffalo Academy never has entered into any agreement, written or oral, with Mr. Solk or Montgomery Mortgage Capital for assistance in obtaining financing." (Dec. of L. Kaya, dated April 10, 2008, ¶ 23). Defendant also expressly states that the signature on the Brokerage Financing Agreement "is not that of any person authorized to act on behalf of Buffalo Academy." (Dec. of L. Kaya, dated March 16, 2009, at ¶2). Defendants argue that the Brokerage Financing Agreement was unilaterally created by Plaintiff and argue that unilateral activity does not give rise to jurisdiction over a non-resident defendant.

Aside from attaching the Brokerage Financing Agreement to their papers, Plaintiffs offer no support to show that the document in question was executed by Defendant. Plaintiffs have not submitted a certification or affidavit describing the facts surrounding the execution of the Brokerage Financing Agreement. Plaintiffs were provided with the opportunity to take jurisdictional discovery, but none was taken.

"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." Mellon Bank (East), 983 F.2d at 555. The Court finds that Plaintiffs have failed to meet their burden - which could have been supported by the jurisdictional discovery Plaintiffs requested but failed to take - to demonstrate that Defendant was a party to the Brokerage Financing Agreement. Plaintiffs' bald assertion is simply not sufficient to sustain their burden, particularly in light of their failure to engage in the discovery they themselves sought in this case. Accordingly, Plaintiffs have failed to persuade the Court that Brokerage Financing Agreement creates a basis to exercise personal jurisdiction over Defendant.

**B. Other Contacts with New Jersey**

In addition to its assertion that it was not a party to the Brokerage Financing Agreement, Defendant argues that it has had no forum-related activities that would give rise to specific jurisdiction in this District. In response, Plaintiffs argue that the Defendant's telephonic and email conversations with Plaintiffs, and the attendance of "an agent of Defendant" at a meeting with Plaintiffs, should give rise to a finding of 'minimum contacts' and personal jurisdiction in this case.

**1.    Telephonic and Email Conversations**

Plaintiffs argue that Defendant engaged in telephonic and email conversations that give rise to 'minimum contacts' with the state of New Jersey. In response, Defendant contends that, as a tenant of Apple, its conversations and correspondence with Plaintiffs were limited to providing information in connection with Apple's application for financing. Defendant concedes that it engaged in conversations with Plaintiffs and that it attended one meeting with Plaintiffs and Apple which, according to Defendant, was held in Buffalo, New York.[2] Defendant

_____

[2] In his declaration, Mr. Kaya acknowledges that he traveled to Paterson, New Jersey, and that he was introduced to Mr. Solk during that visit. However, Mr. Kaya states that "[t]he

continuously asserts that these acts were only meant to assist Apple in obtaining financing *Apple* required.  Defendant  points out that its dealings with Plaintiff never resulted in the negotiation or execution of an agreement between it and Plaintiffs, and emphasize that the only agreement in place was a Brokerage Financing Agreement, dated November 29, 2006, between *Plaintiff and Apple*.[3]  Defendant also emphasizes that it has not entered into an agreement to purchase the Franklin Building, and asserts that it has not engaged Plaintiffs for assistance in obtaining financing.  (Dec. of L. Kaya, dated April 10, 2008, at ¶ 12-13, 23).

Plaintiffs have not countered Defendant's sworn declarations that it did not participate in Apple's arrangement with Plaintiffs with any credible proofs.  Plaintiff Solk submitted certifications in support of his claims, however, the certifications fail to adequately counter Defendant's declarations which squarely discuss the jurisdictional issues at hand.[4]  In addition, no discovery was taken, despite being ordered by the Court.  Even considering Plaintiff Solk's certifications, the Court is constrained to agree that Plaintiffs have not demonstrated that Defendant engaged in forum-related activities sufficient to give rise to minimum contacts.

"Unlike summary judgment proceedings, in which a party need only submit affidavits which make out disputes of material fact, in establishing jurisdiction [a plaintiff] has a burden of proof to sustain." Time Share Vacation Club, 715 F.2d at 61.   Here, Plaintiffs have not presented the court with sufficient facts to make a *prima facie* showing of 'minimum contacts.'

2.      **Agency**

In the introduction to their opposition, Plaintiffs state that they met with "an agent of Defendant" in Paterson, New Jersey regarding the financing at issue in this case.  Defendant expressly refutes this statement, asserting that no "Buffalo Academy representative has traveled to New Jersey to meet with Mr. Solk or any other representative of Montgomery Mortgage Capital."  ( Dec. of L. Kaya, dated April 10, 2008, at ¶ 17).  Although no additional argument or factual support is offered on this topic in Plaintiffs' papers, Plaintiffs did address the issue of agency in their opposition to Defendant's first motion to dismiss.  In that opposition, Plaintiffs argued that Apple acted as Defendant's agent in connection with the financing agreement, thereby subjecting Defendant to personal jurisdiction in New Jersey.

---

purpose of the visit was entirely personal and social, and was completely unrelated to [his] duties as Director of Buffalo Academy."  (Dec. of L. Kaya, dated April 29, 2008, at ¶ 6).  According to Mr. Kaya, his conversation with Defendant Solk was "very brief and consisted of normal social greetings." Id. at 7. Moreover, Mr. Kaya states that he "did not discuss Buffalo Academy or Apple's duties under the lease between it and Buffalo Academy."  Id.

[3] This agreement is distinct from the Brokerage Financing Agreement referenced in Part A of this Report and Recommendation.  The agreement referred to in Part B, which bears the later date of November 29, 2006, was executed by Plaintiffs and Apple.

[4] Although Plaintiffs did not re-submit Mr. Solk's initial certification submitted in connection with the first motion to dismiss, the Court has considered its contents.

For the purpose of completeness, the Court will address Plaintiffs' agency argument. The question of whether an agent acted with authority of the principal rests with the actions of the principal and not the agent. Rodriguez v. Hudson County Collision Co., 296 N.J. Super. 213 (App. Div. 1997). When the principal knowingly permits the agent to assume responsibility or represents to the public that the agent possess authority, the principal will be bound by the actions of the agent. Id.

Actual authority has been defined as the authority a principal expressly or implicitly gives to its agent. U.S. v. Martinez, 613 F.2d 473, 481 (3d Cir. 1980). Defendant continuously asserts that it did not expressly or impliedly authorize Apple to act on its behalf. Rather, Defendant contends that it sought to lease the Franklin Building from Apple and that Apple sought Plaintiffs' assistance to obtain financing to complete renovations required under the lease agreement. Plaintiffs have not conducted the jurisdictional discovery ordered by this Court and have not presented sufficient facts to indicate that Defendant knowingly authorized Apple to act on its behalf. Accordingly, the Court is not persuaded that Apple had actual authority to act on Defendant's behalf.

"Apparent authority arises when a principal acts in a manner as to convey the impression to a third party that the agent has certain power which he may or may not possess." Rodriguez, 296 N.J.Super. at 220. Under the doctrine of apparent authority, liability will be imposed on a principal in cases where the actions of the principal have misled a third party into believing that an agency relationship existed. See Semen's Bldg. Techs., Inc. v. PNC Fin. Servs. Group, Inc., 226 Fed. Appx. 192, 197 (3d Cir. 2007). "The question in every case ... is whether the principal has by voluntary act placed the agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question." Lobiondo v. O'Callaghan, 257 N.J.Super. 488, 496 (App. Div. 2003). Thus, apparent authority "exists only to the extent it is reasonable for the third person dealing with the agent to believe that the agent is authorized." See Semen's Bldg. Techs, 226 Fed. Appx. at 197.

Here, Plaintiffs have failed to demonstrate that Defendant misled them into believing Apple was authorized to act on its behalf. Defendant states that it never represented to Plaintiffs, or to anyone else, that Apple had the authority to act on its behalf, and asserts that it did not permit and would not have permitted Apple to represent itself as possessing such authority. (Dec. of L. Kaya, dated April 29, 2008, at ¶ 23, 25). Plaintiffs have not produced evidence to counter Defendant's claim that it merely answered questions to facilitate the financing required by its landlord, Apple.

The "single entity" rule discussed by Plaintiffs in their opposition to Defendant's initial motion, also does not apply here. The single entity rule is typically applied in situations involving parent and subsidiary entities, and is limited to cases in which the parent's control of the subsidiary is so pervasive "as to obliterate the latter's independent corporate existence." Moon Carrier v. Reliance Ins. Co., 153 N.J.Super. 312, 323 (L. Div. 1977). Defendant and Apple do not have a parent-subsidiary relationship and do not have a long-standing history. (Dec. of L. Laya, dated April 29, 2008, at ¶ 5, 16-21). Rather, Defendant and Apple have only been involved in one transaction, the lease of the Franklin Building, and may or may not be involved in a second transaction to purchase the Franklin Building in the future. Plaintiffs have

not shown the sort of obliteration of independent corporate existence that would give rise to jurisdiction under the single entity rule.

Despite the Court's Order providing for jurisdictional discovery, Plaintiffs have failed to serve any written discovery demands or to take any depositions.  Defendant's arguments are supported by its lease agreement with Apple and other documentary evidence.  Plaintiffs have not demonstrated sufficient facts to show that Apple acted with actual or apparent authority on behalf of Defendant, or that the two operate as a single entity.  The Court should not find that Defendant's relationship with Apple gives rise to 'minimum contacts.'

Because Plaintiffs have not made the threshold showing of sufficient minimum contacts with New Jersey to warrant the exercise of personal jurisdiction over Defendant, the Court will not address the secondary issue of whether exercising jurisdiction would comport with fair play and substantial justice.  See Vetrotex, 75 F.3d at 154, n.9.


## CONCLUSION

Plaintiffs have not shown that Defendant purposefully availed itself of the forum of New Jersey for purposes of establishing the minimum contacts required for specific jurisdiction. Plaintiffs are unable to demonstrate "through sworn affidavits or other competent evidence" a *prima facie* case of personal jurisdiction.  Time Share Vacation Club, 715 F.2d at 67, n.9.  In light of the foregoing, it is respectfully recommended that Defendant's motion be granted.


Respectfully submitted,

  s/ Claire C. Cecchi
**HON. CLAIRE C. CECCHI**
**United States Magistrate Judge**
**Dated: August 28, 2009**

8